IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEAN PAUL REYES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RICHARD VOLANTI, DETECTIVE ) <br> MONACO, OFFICER GHILONI, RUTH ) <br> SIABA [GREEN][1], individually, and the ) <br> CITY OF BERWYN, ) <br> a municipal corporation, ) <br> ) <br> Defendants. ) | Case No. 22 CV 07339 |

**RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND MOTION
FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c)
AND FOR SANCTIONS**

NOW COME Defendants by and through their attorney Cynthia S. Grandfield of Del Galdo Law Group, LLC, and in response in opposition and for a motion for a protective order argues:

1. Mr. Reyes is an online blogger, YouTube and social media personality that refers to himself as the "Long Island Auditor." *See* https://www.youtube.com/@LongIslandAudit. He has no media credentials or journalist training. After he was laid off from his office worker job in 2020, he started his social media channels. Mr. Reyes makes videos where he goes into government buildings and follows various government workers around, including

---

[1] Throughout the course of the complaint, Reyes interchanges "Ruth Siaba" with "Ruth Siaba Green." As her name is "Ruth Siaba Green," the "Green" is reflected in brackets for the sake of consistency and clarity.

1

but not limited to police officers, and films them on his phone. He has approximately 500,000 followers to his social media. At his deposition, he testified that he makes well into the 6-figures profit off this channel. It is his sole source of income. He resides in New York. *See* Reyes Dep. p. 10, 20-25 attached as *Exhibit A*.

    2. This case is about an incident where Mr. Reyes showed up to City Hall and was filming all areas on his cell phone video. This alarmed and disturbed several workers – many of whom are rank-and-file workers – who, among other things, worried that he was filming so that he could record what the area looked like and come back with a weapon. *See* Green Ans. to Interrogatories No. 7-8 attached as *Exhibit B*.

    3. A criminal misdemeanor complaint was filed against him. His attorney's motion to dismiss the complaint was denied. During the pendency of his criminal case, Mr. Reyes continued to reference and flash information related to the individual defendants on his screen during his YouTube and other postings. The case was ultimately stricken on leave after the Cook County Judge granted a motion to video record the trial. While Mr. Reyes denied that he had personally done it, during a previous Zoom court appearance in the criminal case, someone had recorded it and it was posted online by Reyes and remain posted. *See Exhibit A*, p. 91-93. The assistant state's attorneys assigned to that courtroom were young women approximately two (2) years out of law school and would have been broadcast to hundreds of thousands of people via his channel if his trial would have proceeded.

4. Mr. Reyes was not physically injured in any way during his incident and arrest at Berwyn. He appeared for all court appearances via Zoom, with the exception of the date of his criminal trial. His criminal defense attorney represented him for free. His phone was returned. *See Exhibit A*, p. 65-68, 91. Not only did he not lose wages and income as a result of his arrest, but it is believed he made large sums of money based off his postings about the incident, his criminal case, and this lawsuit.

5. This is not the first criminal complaint that has been filed against Mr. Reyes for his activity. At the time of his deposition, he had multiple criminal cases for trespass and similar that remained pending. Another case was only dismissed after he had completed a diversion program. *See Exhibit A* p. 71-72; 74-76.

6. Mr. Reyes deposition was taken in this case on November 8th, 2023. *See* Am. Not. of Dep. attached as *Exhibit C*.

7. Mr. Reyes was well aware that undersigned counsel's law firm would be taking his deposition. A few days before his deposition he stopped at the Berwyn City Hall and made a FOIA request for all of this counsel's law firm's legal bills in relation to defending his case. *See* FOIA Request attached as *Exhibit D*. During his deposition he indicated that it was for his "investigation." Defense counsel understood this as a method to attempt to harass and intimidate her and her law firm.

8. A settlement conference was set before Magistrate Judge Cole for December

5, 2023 via video conference. Defense counsel had already set a trip with her dad to Italy to celebrate his milestone birthday. But, because it was a date available for Judge Cole, opposing counsel, and Mr. Reyes, defense counsel agreed to participate and spent that time in her hotel room on WiFi with the conference. The conference was unsuccessful. Defendants made an offer, but Reyes wanted more money. *See* Dkt. No. 38.

9. Almost immediately, after the conference, defense counsel began receiving a flood of emails from unknown individuals that were followers of Mr. Reyes. At the time, counsel was still in Italy with her dad. These emails were extremely offensive and harassing. Counsel has not retained all of the emails because they were offensive to look at and keep in her inbox. Upon clicking on Mr. Reyes YouTube channel, undersigned counsel learned that Mr. Reyes had flashed her law firm profile up on the screen behind him and offered a running commentary about her. Counsel also noted that one of his followers began "following" her on LinkedIn – which counsel learned does not require the user's permission. In addition to these extremely offensive emails, voicemails to the same effect were flooding her work voicemail. Finally, on a day that counsel and her dad were traveling to Assisi on a pilgrimage to see St. Francis' tomb, counsel briefly turned her cell phone on to get walking directions and received text messages from individuals that again appeared to be Mr. Reyes supporters. Counsel's cell phone is not public knowledge and was never disclosed in this case. This was upsetting and frightening for both counsel and her dad.

10. Again, while counsel deleted most of this due to the upsetting nature, here are what some of the ones retained stated:

> Subject: Scam Artist Insider Tip
>
> Hey, just wanted you to know you're a piece of shit garbage domestic terrorist tyrant mafia gang supporting unethical corrupt piece of government loving trash, I can't wait to donate and pay for anyone's legal fees coming against you, you seem like an unprofessional terrible heartless human being that cared only about money
>
> You're the textbook letter of why people think lawyers are trash humans
>
> Grow a heart and get s life and a real profession you bottom of the dumpster barrel trash , can't believe this country has to have people like you allowed to be here
>
> *See* Email attached as *Exhibit E*.
>
> Subject: Hey Cynthia, LOL
>
> https://www.youtube.com/live/1M4QiBAEuM8?si=d9VT8uGiEc1IA5hL
>
> Your a clown 🤡 and I'm looking forward to reviewing his settlement agreement once he drops it and when you decide to the settle on his number NOT your numbers your clients already lost and by the way Mr.Reyes has enough money to afford any attorney and drag this case of for another 5 years by making more than 300k a year off youtube views solely not including all the other checks from his won settlements..
>
> *See* Email attached as *Exhibit F*.

Again, there were many more. Defense counsel also recalls that one of them that she looked up had a criminal record related to stalking or similar and another advised her "now go make me a sandwich."

11. The named defendants in this case have received similar messages, although in a much larger volume.

5

12. Mr. Reyes has repeatedly claimed that he has no control over his supporters and they just act on their own. However, this is simply not true. Instead, Mr. Reyes posts things at key times knowing exactly what the reaction of his supporters will be based on past history.

13. At the same time that he was posting content related to the City of Berwyn and the individuals he has named, Mr. Reyes had also, on his own, sent a settlement demand to the City – which included a demand that Ms. Green personally be terminated. *See* Pre-Litigation Settlement Demand attached as *Exhibit G*.

14. While counsel was still in Italy, Plaintiff's counsel reached out to her to extend fact discovery so that they could take depositions. Defense counsel advised that she would need time to consider it given the kind of communications she had received. Defense counsel herself had no real reason to extend discovery, but ultimately agreed to do so out of a sense of civility to the other side so that they could get the depositions that they wanted to proceed with their case. However, defense counsel expressly stated that she would *only* agree to an extension of oral discovery if the depositions were conducted in-person. This was because of this past course of conduct by Mr. Reyes. This was agreed to and reflected in the motion for an extension. *See* Dkt. No. 48, ¶7-8.

15. Plaintiff's counsel then did little to nothing to obtain those depositions

and again filed a motion for an extension of time. Again, defense counsel did not oppose that.

16. Defense counsel received a notice of deposition that stated that it was going to be via Zoom. Defense counsel contacted Plaintiff's counsel via email and reminded them that the depositions were only to proceed in-person. Defense counsel then received a notice of deposition that stated that the deposition would be in-person but recorded via video. Defense counsel then contacted opposing counsel via email and telephone multiple times on Friday March 1, 2024 and explained that they were not to be recorded via video for all the reasons stated in here. After much discussion, defense counsel proposed as a compromise that the deposition only be video recorded if a protective order be entered that it not be used outside the court proceedings for any purpose, including but not limited to, on Reyes' YouTube channel.

17. Defense counsel advised that she would send proposed protective order language by the end of the day on Friday, March 1st, 2024. Defense counsel did that – despite the fact that she had a very busy day that day and it was not until after 9:00 p.m.. *See* Email attached as *Exhibit H*; Proposed Protective Order attached as *Exhibit I*.

18. On Monday, March 4, 2024, Plaintiff's counsel filed a motion to compel these depositions – which also falsely stated that defense counsel had not sent an email on Friday, March 1, 2024 with the proposed protective order language.

7

19. On Tuesday, March 4, 2024, Plaintiff's counsel advised that they would only agree to the protective order to not utilize the video if it stated "during the pendency of the proceedings." Plaintiff's counsel repeatedly represented and stated that the deposition was being recorded via video at his client's request and insistence, and that he personally did not believe they were useful. He further asserted that the Plaintiff "has a right" to video record the deposition despite defense counsel repeated explanation and assertion that he cannot video record for purposes other than for use in relation to court proceedings and that Rule 26(c) provides protection against conducting discovery that is harassing. All of this taken together illustrates that the video recording of these depositions serves no purpose related to these court proceedings. Further, given Reyes' past course of conduct, there is a strong probability or likelihood that the recording will be posted on his YouTube channel and be potential additional fodder for bullying and harassment.

20. Federal courts across the country have repeatedly warned and admonished for decades that video recorded depositions are not to be used for purposes other than for the court proceedings itself and have entered protective orders, sanctions, and more in relation to them. Videotaped depositions are "not intended to be a vehicle for generating content for broadcast and other media." Paisley Park Enterprises v. Uptown Productions, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999); see also Drake v. Benedek Broadcasting Corp., 2000 U.S. Dist. LEXIS, at * 3 (D. Kan. Feb. 9, 2000) ("courts must be vigilant to ensure that [videotaped

8

depositions] are not used improperly for purposes unrelated to their role"). Video can easily be edited and manipulated. See Hobley v. Burge, 225 F.R.D. 221, 226 (N.D. Ill. 2004) (citing Felling v. Knight, 2001 U.S. Dist. LEXIS 22827, No. IP01-0571-C-T/K, 2001 WL 1782360, 2 (S.D. Ind. Dec. 21, 2001) (Tinder, J.)) ("videotapes . . . . can be cut and spliced and used as sound-bites' on the evening news.").

21. Indeed, recently in the Seventh Circuit and the Northern District of Illinois, a case was dismissed for attempts to post videos of depositions to YouTube as a sanction. The report and recommendation was made by Magistrate Judge Heather McShain, entered by District Judge John Tharp, and affirmed by the Seventh Circuit. *See Newsom v. Oakton Community College*, Case No. 19 CV 2462, 2022 WL 2355886 (N.D. Ill. March 9, 2022)(McShain, Mag. J.); 2022 WL 2874801 (N.D. Ill. July 12, 2022)(Tharp, J.); 2023 WL 355190 (7th Cir. 2023).

22. As described herein, defense counsel engaged in multiple ILND LR 37.2 attempts to resolve differences.

23. Fed. R. Civ. P. 26(c) provides that discovery may be denied or limited to "prevent annoyance, embarrassment, oppression, or undue burden or expense[.]" It is appropriately applied in this context.

24. In addition to the ability to enter sanctions pursuant to Rule 37, and a protective order pursuant to Rule 26(c), the Court also has inherent authority to sanction. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Mohammed v. Anderson,* 18 C 8393, 2019 WL 3943669, at *3 (N.D. Ill.

Aug. 21, 2019) (internal quotation marks omitted), *aff'd* 833 F. App'x 651 (7th Cir. 2021). "The inherent power should be used sparingly, to punish misconduct (1) occurring in the litigation itself, not in the events giving rise to the litigation[,] and (2) not adequately dealt with by other rules[.]" *Id.* (internal quotation marks omitted).

WHEREFORE, for all the reasons stated in this response and motion the Defendants respectfully request that the Court enter an order:

(1) denying the motion to compel;

(2) entering a protective order pursuant to Rule 26(c) prohibiting the video recording of any depositions;

(3) ordering Mr. Reyes to submit a calculation as to how much in revenue he received in the post of defense counsel's profile to his YouTube channel and that he be required to pay that amount to the Court or to a 501(c)(3) animal charity under the Court's inherent power to sanction as an equitable and proportional sanction;

(4) that the post referencing defense counsel be removed from his YouTube channel if he has not done so already as and equitable and proportional sanction;

(5) ordering that Reyes be prohibited from making any further posts about this lawsuit to his channel as a protective order pursuant to Rule 26(c); and

(6) for such other and further relief as is equitable and just.

10

Respectfully submitted,

By: */s/ Cynthia S. Grandfield*

Cynthia S. Grandfield (ARDC No. 6277559)
Sean M. Sullivan
DEL GALDO LAW GROUP, LLC
111 N. Wabash, Suite 908
Chicago, Illinois 60602
(312) 222-7000 (t)
grandfield@dlglawgroup.com
sullivan@dlglawgroup.com