IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEAN PAUL REYES, )<br>　　Plaintiff, )<br> )<br>v. )<br> ) Case No. 22 CV 07339<br>RICHARD VOLANTI, DETECTIVE )<br>MONACO, OFFICER GHILONI, RUTH )<br>SIABA [GREEN]¹, individually, and the )<br>CITY OF BERWYN, a municipal corporation, )<br>　　Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On November 8, 2021, Defendants RICHARD VOLANTI ("Sgt. Volanti"), ROBERT MONACO ("Det. Monaco"), CHARLES GHILONI ("Officer Ghiloni"), and RUTH SIABA GREEN ("Siaba Green") (collectively "Individual Defendants") did nothing more than exercise their duties and make reasonable judgments based on the facts before them.² In contrast, Plaintiff Sean Paul Reyes ("Reyes") engaged in conduct that disturbed City of Berwyn (the "City") employees, resulting in an criminal complaint for disorderly conduct. Reyes claims that the Individual Defendants not only violated his Fourth Amendment rights, but also committed a civil conspiracy and maliciously prosecuted him. *See* Dkt. No. 18. For the reasons explained below, the undisputed material facts warrant the granting of summary judgment on all claims in favor of the all the defendants.

**I. ARGUMENT**

　　　A. *The Individual Defendants had Probable Cause to Arrest Reyes (Count I).*

"An essential predicate to any §1983 claim for unlawful arrest is the absence of probable cause." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) (*citing Jones by Jones v. Webb*, 45 F.3d 178, 181

---

¹ As her name is "Ruth Siaba Green," the "Green" is reflected in brackets for the sake of consistency and clarity.
² The facts are taken from the Defendants' Joint 56.1 Statement of Undisputed Facts, cited herein as "(SOF __)." While the evidence in this Motion is construed "in the light reasonably most favorable" to the Plaintiff to give them "the benefit of all reasonable inferences," *Brunson v. Murray*, 843 F.3d 698, 701 (7th Cir. 2016), Defendants are in no way admitting the truth of Plaintiff's allegations or testimonies.

1

(7th Cir.1995)). "Law enforcement officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.'" *Id.* at 646. "[C]ourts evaluate probable cause 'not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer-seeing what he saw, hearing what he heard.'" *Id.* If a reasonable officer would have believed the person had committed a crime "the arrest is lawful even if the belief would have been mistaken." *Id.* "Thus probable cause has been described as a zone within which reasonable mistakes will be excused." *Id.*

The undisputable facts demonstrate that based on the information known to the Individual Defendants at the time Reyes was placed in handcuffs, there was probable cause to arrest him. As Sgt. Volanti was the arresting officer, it is his knowledge that must be focused on, particularly as Det. Monaco was there to help with Reyes being handcuffed and as Officer Ghiloni was there for assistance and ultimately transferred Reyes to the police station. *See* SOF, ¶39-43. Sgt. Volanti knew he was being called to City Hall to deal with an individual who was videotaping inside the building. *See* SOF, ¶20. When he arrived, Sgt. Volanti was told by Det. Monaco that Reyes was recording and that he was asked to stop, and also observed Reyes filming himself. *See* SOF, ¶21-22. Additionally, Sgt. Volanti spoke with Siaba Green about her requesting that Reyes stop recording her, and to City employees Shannon Reberski and Tricia Powers about how they felt when Reyes was recording them. *See* SOF, ¶23-25. Specifically, Reberski, was highly upset and visibly shaking during their conversation about Reyes' conduct and expressed how uncomfortable she was with his conduct, and Powers, informed him that she observed Reyes filming and was frightened, alarmed, and disturbed by it. *See* SOF, ¶24-25. The fact that Reyes could submit his FOIA request without any interference from any City

2

employee confirms that the primary issue was with Reyes video recording City employees and making them feel uncomfortable at work. *See* SOF, ¶26-30.

Based on the information Sgt. Volanti had at the time, he decided to arrest Reyes for an investigation into possible charges concerning disorderly conduct and the video recording/eavesdropping statute cited in the signs at City Hall. *See* SOF, ¶39. He had more than enough trustworthy information to reasonably believe Reyes committed disorderly conduct, and while he had questions about the eavesdropping statute, the evidence provided more than a hunch to support the arrest. *See* SOF, ¶20-26; 30; 36-39; *Murawski v. Reid*, 375 F. Supp. 3d 998, 1003 (N.D. Ill. 2019) ("Probable cause deals with probabilities, not hard certainties. It requires more than a hunch, but not necessarily a finding that it was more likely than not that the arrestee was engaged in criminal activity—the officer's belief that the arrestee was committing a crime need only be reasonable.").

While he later concluded that the eavesdropping statute on those signs did not apply in Sgt. Volanti's opinion, there was still sufficient information within his knowledge to support probable cause to arrest Reyes for violating the disorderly conduct statute. *See* SOF, ¶45. After all, "[t]he actual existence of *any* probable cause to arrest precludes a §1983 suit for false arrest." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir. 2006); *see also Selby v. Bd. of Trustees of Moraine Valley Cmty. Coll., Dist. No. 524*, No. 16 C 3489, 2018 WL 988091, at *6 (N.D. Ill. Feb. 20, 2018) (citation omitted) ("Probable cause to believe that *any* crime has been committed will preclude a false arrest claim, 'even if the person was arrested on additional or different charges for which there was no probable cause.'").

Even with the confusion concerning the applicability of the eavesdropping statute on the signs at City Hall, any supposed reliance that Reyes will put on those facts falls reasonably within the realm of mistakes allowed by probable cause. *See* SOF, ¶36-37; 45. The fact that Sgt. Volanti was seeking input from others, as he had just become a supervisor himself, and that he wanted to read the statute but was unable to do so on scene, all confirms that any reliance on that statute to support Reyes' arrest

3

is an excusable mistake that any officer in his position could have made. *See id.* After all, no one else on scene believed the statute did not apply. *See* SOF, ¶31-35. Hence, any mistaken probable cause determination was just that – a mistake that was obviously addressed as he was never charged with violating that statute. *See* SOF, ¶46. It would be completely different if, after Sgt. Volanti reviewed the eavesdropping statute, understood that it did not apply, and still proceeded to ask Siaba Green to sign a criminal complaint on that basis. There is no evidence to establish that is what happened here. Rather, Sgt. Volanti took reasonable steps to ensure that his conduct was in compliance with the law and when he learned that one law did not apply, he conducted himself in a manner in accordance with the law by proceeding only with the disorderly discharge count.

Objectively, when looking at the disorderly conduct statute itself, a reasonable person in Sgt. Volanti's position could conclude that there was probable cause for Reyes' arrest. Probable cause is determined by looking at the elements of the applicable criminal statute and the facts and circumstances of each particular case. *See Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010). The arresting officer is not required to determine whether each element of a statute is satisfied; rather, "probable cause involves the exercise of judgment, which 'turn[s] on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Id.* at 622-23 (citing *Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1246–48 (7th Cir.1994) (affirming summary judgment for officers who had probable cause for arrest for battery and had no duty to conduct further investigation); *Gramenos v. Jewel Cos.,* 797 F.2d 432, 438–42 (7th Cir.1986) (affirming summary judgment for officers who had probable cause for arrest for shoplifting and had no duty to conduct any investigation)).

Here, Reyes was charged with violating 720 ILCS 5/26-1 (a)(1), which states:

(a) A person commits disorderly conduct when he or she knowingly:

(1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace;

4

720 ILCS 5/26-1 (a)(1). *See* SOF, ¶46. The facts obtained by Sgt. Volanti confirmed that Reyes not only caused City employees to be frightened and alarmed, but that Reyes' continued refusal to stop videotaping not just the first but also the second floor of the City Hall after being requested to stop, would make anyone feel alarmed and disturbed and could provoke a breach of the peace inside City Hall. *See* SOF, ¶3; 5-18; 22-26. This is supported by the fact that Reyes did not stop filming until he was arrested, and likely would have continued filming had the defendant officers not been involved. *See* SOF, ¶58. As there is no reason to disbelieve the information Sgt. Volanti received from Siaba Green, Det. Monaco, or other City employees regarding Reyes' conduct on November 8, 2021 and how it made them feel, or disbelieve anything he saw with his own eyes, any objective officer in his position would conclude that there was probable to arrest Reyes on that day. *See* SOF, ¶21-26.

Since Sgt. Volanti had probable cause to arrest Reyes, the supportive conduct of Det. Monaco and Officer Ghiloni are also covered by probable cause. *See* SOF, ¶40-42. Regarding Siaba Green, she is not a police officer and did not arrest Reyes; the last time she saw him was when he left to go back to the first floor of City Hall with Det. Monaco. *See* SOF, ¶1-2; 19; 39-43. Though her job duties include ensuring that City employees have what they need and feel safe, she "is not responsible for performing police investigations and deciding just how to allocate fault" for Reyes' conduct. *See Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 625 (7th Cir. 2010). The information she had prior to Reyes being arrested was: 1) being filmed by Reyes while working in her private office; 2) asking him to stop recording her; 3) Reyes refusing to stop recording; 4) her awareness of sign(s) at City Hall concerning video recording people without consent; 5) her belief that the sign and the statute referenced therein allowed her to refuse to allow Reyes to record her without her consent; 6) awareness that other City employees were also filmed by Reyes prior to her and were made to feel disturbed; and 7) her duty to ensure that City employees remain safe and able to perform their government jobs as required. *See* SOF, ¶9-11; 14-16; 31-33; 53; 56. These facts taken together support probable cause for

5

Siaba Green to sign criminal complaints against Reyes for disorderly conduct. *See, e.g.*, *Stokes*, 599 F.3d at 626. The fact that she later found out that the statue on the City signs was deemed inapplicable, was a simple mistake that should not prevent a probable cause finding in this matter. *See* SOF, ¶ 34. Thus, summary judgment should be granted because Reyes' Fourth Amendment rights were not violated.

### B. *The Individual Defendants are Entitled to Qualified Immunity (Count I).*

"[Q]ualified immunity affords an added layer of protection by shielding officers from 'suit for damages if a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'" *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). "Often termed 'arguable probable cause,' qualified immunity in this context protects officers who reasonably but mistakenly believe that probable cause exists". *Id.* at 714-15. "The plaintiff bears the burden of proof on the issue" and the proper inquiry is "whether the plaintiff has asserted a violation of a constitutional right at all, … and also whether the plaintiff has demonstrated that the applicable constitutional standards were clearly established at the time in question." *Id.* The constitutional right allegedly violated must be "'sufficiently particularized' to enable the district court to determine whether the defendants were on notice that their actions violated clearly established law". *Id.*; *see, e.g.*, *Taylor v. Weitzman*, 470 F. Supp. 3d 806, 811–12 (N.D. Ill. 2020) (finding plaintiff's constitutional right to be free from arrest without probable cause was too broad and left out the defendant's specific conduct, and holding the relevant question was whether the defendant's failure to cancel an investigative alert violated a clearly established constitutional right not to be seized on a stale alert). All one needs to show is that "'a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'" *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 880 (7th Cir. 2012). The existence of arguable probable cause is an absolute bar to Reyes' §1983 claim for unlawful arrest. *See Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012).

Here, the Court must decide whether it was "clearly established" on November 8, 2021 that it was a violation of Reyes' Fourth Amendment right to be handcuffed and taken to the police station for an investigation into whether he violated an eavesdropping statute and/or a disorderly conduct statute at the time he continued to take non-consensual cell phone video recordings after being repeatedly told to stop recording, and whether a reasonable person would have known this based on the facts known to the Individual Defendants at that time.

As discussed above, probable cause simply requires more than a hunch that an individual has committed a crime, though an official does not need to conclude that the individual more likely than not committed that crime. *See Murawski v. Reid*, 375 F. Supp. 3d 998, 1003 (N.D. Ill. 2019). The belief that a crime had been committed only needs to be reasonable. *See id.* This standard was "clearly established" at the time Reyes was arrested. It is also "clearly established" that if there is probable cause, further investigation is not needed. *See Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 622-23 (7th Cir. 2010). Hence, Reyes cannot now argue against these principles to assert that his Sgt. Volanti arresting him for disorderly conduct as well as to actually take on the responsibility of conducting a further investigation into the applicability of the eavesdropping statute violates "clearly established" constitutional principles. But even if we assume *arguendo* that Reyes' Fourth Amendment rights were violated, no reasonable person would have known his rights were violated based on the information known to the Individual Defendants during the relevant time.

Again, the relevant inquiry must start with what information Sgt. Volanti had at the time Reyes was arrested. The undisputed evidence shows that dispatch sent Sgt. Volanti over to City Hall to deal with the incident in progress, after Siaba Green asked Det. Monaco to contact the station for a supervisor. *See* SOF, ¶18; 20. When Sgt. Volanti arrived at City Hall, he observed Reyes filming and also speaking with Officer Ghiloni and Det. Monaco. *See* SOF, ¶21. Upon arrival, Sgt. Volanti was told by Det. Monaco of Reyes' recording and the previous requests made to get Reyes to stop video

7

recording. *See* SOF, ¶22. Shortly thereafter, Sgt. Volanti went up to the second floor to speak with Siaba Green in her office regarding the request she had made for a supervisor. *See* SOF, ¶23. To gather more information, Sgt. Volanti spoke with Shannon Reberski and Tricia Powers about how they felt when being recorded by Reyes. *See* SOF, ¶24-25.

Sgt. Volanti then approached Reyes and asked for his name, which Reyes refused to give, but he eventually also told Sgt. Volanti that he was at City Hall to put in a FOIA request. *See* SOF, ¶26-28. Reyes proceeded to put in a FOIA request without any incident. *See* SOF, ¶29. After Reyes put in his FOIA request, Sgt. Volanti showed Reyes the sign affixed to the exterior walls of City Hall, which stated that it was illegal to record at City Hall pursuant to a statute. *See* SOF, ¶30.

Sgt. Volanti was not sure if permission from the occupying entity was required to videorecord private offices because he believed the laws kept changing. *See* SOF, ¶36. To gain clarity, Sgt. Volanti reached out to other officers via phone before the arrest for "guidance" because the law was unclear to him, but those individuals did not answer. *See* SOF, ¶37. After all, Sgt. Volanti had just been promoted to the position of Sergeant within the police department. *See* SOF, ¶38. Ultimately, he made the decision to arrest Reyes and bring him in for an investigation regarding disorderly conduct and the posted statute prohibiting videotaping at Berwyn City Hall. *See* SOF, ¶39. When Sgt. Volanti got back to the police station, he was able to look up the statute himself, read it, and concluded that it had nothing to do with videotaping in public places. *See* SOF, ¶45.

A criminal complaint was filed against Reyes, charging him with Disorderly Conduct. *See* SOF, ¶46-47. Sgt. Volanti asked Siaba Green if she would sign complaints against Reyes for his conduct. *See* SOF, ¶48. After Sgt. Volanti typed up the criminal complaint against Reyes on November 8, 2021, he brought the complaint to Siaba Green's office at Berwyn City Hall and asked Siaba Green to sign it, which she did. *See* SOF, ¶49-50. Siaba Green signed the criminal complaint against Reyes on behalf of the City Hall employees. *See* SOF, ¶50-51. In her words, Siaba Green described the disturbance as

8

Reyes going through City Hall, interrupting daily business by filming, making City clerks feel uncomfortable and threatened, and continuing to film even after being asked to stop. *See* SOF, ¶53. And then when she asked him to stop filming, he continued; ever representing who he was, or his name. *See id.* Siaba Green believed that Reyes was not at City Hall to seek any City services but instead to interrupt daily business by filming City Hall employees by threatening, disturbing, or otherwise making City employees uncomfortable by filming them. *See* SOF, ¶54-55. As the person responsible for ensuring that City Hall runs smoothly so everyone can get the services they need and employees feel safe, it makes sense for the City employees to go to her for assistance when Reyes made them feel unsafe and uncomfortable in their place of employment. *See* SOF, ¶56.

When analyzing these facts, a reasonable person in Sgt. Volanti's position would have similarly concluded it was not "clearly established" that handcuffing Reyes and taking him to the police station for an investigation into whether he violated an eavesdropping statute and a disorderly conduct statute at the time he continued to take non-consensual cell phone video recordings after being repeatedly told to stop recording, violated Reyes' Fourth Amendment rights. Sgt. Volanti believed that the statutes changed over time, and because he was not sure of whether the eavesdropping statute that was posted all around City Hall was applicable, he wanted to confirm at the station. *See* SOF, ¶36. Public officials, like police officers "are not required to be legal scholars." *Castillo Crespo v. Railey*, No. 03 C 2911, 2004 WL 906122, at *4 (N.D. Ill. Apr. 27, 2004) (*quoting Williams v. Jaglowski,* 269 F.3d 778, 783 (7th Cir.2001)). "Because qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, a law enforcement officer will be immune to claims based on an arrest without probable cause unless it is obvious that no reasonably competent officer would have believed that there was probable cause to arrest." *Id.* (*quoting Spiegel v. Cortese,* 196 F.3d 717, 723 (7th Cir.2000)). Here, it was not patently obvious arresting Reyes for concerns that he violated the eavesdropping

9

statute would violate "clearly established" probable cause principles, particularly as Reyes was also arrested for disorderly conduct. Hence, qualified immunity should apply to his conduct.

As it pertains to Siaba Green's knowledge, she was aware of several signs at Berwyn City Hall prohibiting video recording based on a statute. *See* SOF, ¶31-32. Siaba Green believed that the statute reference in the City Hall signs allowed her to prevent Reyes from video recording her without her consent while she was working in her office at City Hall. *See* SOF, ¶33. It was not till after the fact that Siaba Green learned the statute referenced in the signs were not valid. *See* SOF, ¶34. Additionally, Siaba Green had received report(s) that City employees were uncomfortable, disturbed, and frightened when being filmed by Reyes. *See* SOF, ¶10-11; 53. Reyes did not even stop filming her as she was working on City business in her private office on the second floor of City Hall, despite her asking him to stop filming. *See* SOF, ¶15-19. Given these facts, how could it be "clearly established" to someone in Siaba Green's position that signing criminal complaints for disorderly conduct violated Reyes' Fourth Amendment rights? Again, Siaba Green is not a police officer; she is a City Administrator who is responsible for the safety of the employees working in City Hall. Thus, she is entitled to qualified immunity, at least to the extent that she made a mistake in her understanding of the law initially.

And finally, with respect to Det. Monaco and Officer Ghiloni, their assistance with Reyes' arrest is premised on Sgt. Volanti's decision to arrest. So, because Sgt. Volanti deserved qualified immunity, they do as well. In fact, Det. Monaco similarly deserves immunity because, like Siaba Green, he did not learn that the signs, which concerned the eavesdropping statute, was not applicable till he was leaving work that day. *See* SOF, ¶35. Again, such a misunderstanding of the law deserves qualified immunity. For all these reasons, summary judgment should be granted on Count II.

    C. *Officer Ghiloni's Lack of Personal Involvement Requires Summary Judgment (Counts I-II).*

"Individual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue." *Kelly v. Mun. Cts. of Marion Cnty.*, 97 F.3d 902, 909 (7th Cir.1996).

Accordingly, "§1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir.2003) (citations omitted); *see Minix v. Canarecci*, 597 F.3d 824, 833–34 (7th Cir.2010). Officer Ghiloni's presence on scene and the fact that he transported Reyes to the police station are insufficient on their own to establish any §1983 liability. *See* SOF, ¶41-43; *see Mickiel v. Beluso*, No. 08 CV 6806, 2011 WL 2295278, at *3 (N.D. Ill. June 9, 2011) (holding police officers "whose only involvement with an arrestee is to transport him to a police station for booking, are not liable under 42 U.S.C. § 1983 for alleged constitutional violations arising out of a plaintiff's arrest."). Therefore, he should be granted summary judgment on Counts I and II for lack of personal involvement.

> D. *The Undisputed Material Facts Fail to Demonstrate Any Civil Conspiracy Amongst the Individual Defendants (Count II).*

To prevail on his civil conspiracy claim, Reyes must establish that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018). Put differently, Reyes must "show an underlying constitutional violation" and "demonstrate that the [individual] defendants agreed to inflict the constitutional harm." *Id.* This is because conspiracy is not an independent basis for §1983 liability. *See Nelson v. City of Chicago*, No. 08 C 4754, 2010 WL 1978610, at *9 (N.D. Ill. May 14, 2010) (*citing Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir.2008) and *Cefalu v. Village of Elk Grove,* 211 F.3d 416, 423 (7th Cir.2000) in granting summary judgment to defendants because plaintiff failed to establish that defendants violated his constitutional rights). "To prove a conspiracy to deprive him of his constitutional rights, the plaintiff must show that the parties directed themselves toward an unconstitutional action by virtue of a mutual understanding,' and that they had a 'meeting of the minds.'" *Washington v. Amatore*, 781 F. Supp. 2d 718, 720–21 (N.D. Ill. 2011).

As discussed above, the Individual Defendants did not violate Reyes' Fourth Amendment rights on November 8, 2021, so summary judgment should be granted in the defendants' favor on this

11

count. If we assume the Court disagrees, or at least believes a genuine issue of fact exists regarding whether there was a constitutional violation, the evidence fails to establish that there was a "mutual understanding" between any of the Individual Defendants to deprive Reyes of his Fourth Amendment rights and that they had a "meeting of the minds" regarding the same.

Again, the decision to arrest Reyes was wholly in the hands of Sgt. Volanti. *See* SOF, ¶39. No one asked Sgt. Volanti to arrest Reyes. *See* SOF, ¶44. When Sgt. Volanti spoke with Det. Monaco and Siaba Green about what happened upon his arrival, there was no "meeting of the minds"; Sgt. Volanti was simply obtaining information about what Reyes had done. *See* SOF, ¶22-23. Det. Monaco and Siaba Green informing Sgt. Volanti who just arrived to the scene of what Reyes did, does not establish an agreement to violate Reyes' rights. *See, e.g.*, *Washington v. Amatore*, 781 F. Supp. 2d 718, 720–21 (N.D. Ill. 2011) (granting summary judgment because plaintiff's allegation that a sergeant arrived at the scene roughly five minutes after the accident, spoke with defendant, and then placed plaintiff in handcuffs did not constitute an agreement to violate plaintiff's rights). Additionally, Siaba Green asking Det. Monaco to call a supervisor still does not show any "meeting of the minds" or a "mutual understanding" to deprive Reyes of his Fourth Amendment rights. *See* SOF, ¶18. Simply talking to each other about what was going on cannot establish a conspiracy. *See Awalt v. Marketti*, 74 F. Supp. 3d 909, 941 (N.D. Ill.), *supplemented*, 75 F. Supp. 3d 777 (N.D. Ill. 2014).

At best, Reyes will likely argue that Sgt. Volanti asking Siaba Green to sign the criminal complaint is evidence of a conspiracy to deprive Reyes of his Fourth Amendment rights but in truth, this is nothing more than speculation. *See* SOF, ¶48-49. Again, the criminal complaint was for disorderly conduct, which Siaba Green described as Reyes going through City Hall, not seeking any specific City services while filming City employees, interrupting daily business, making City clerks feel uncomfortable and threatened, and continuing to film even after being asked to stop. *See* SOF, ¶46; 53. And Reyes cannot establish a "meeting of the minds" to deprive Reyes of his Fourth Amendment

12

rights as Siaba Green did not find out about Reyes being arrested until after Sgt. Volanti decided to handcuff him. *See* SOF, ¶52. There simply is no genuine issue of material fact that could lead this Court demonstrate that any of the Individual Defendants conspired together to harm Reyes. Therefore, summary judgment should be granted in favor of the Individual Defendants.

### E. *The Undisputed Material Facts Confirm the Individual Defendants Did Not Maliciously Prosecute Reyes.*

To establish malicious prosecution, generally, one must show the following: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *McWilliams v. City of Chicago*, 451 F. Supp. 3d 867, 879 (N.D. Ill. 2020). Each element must be established to prevail. *See id.* (*citing Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001).

"[I]n order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or 'his participation in it must have been of so active and positive a character as to amount to advice and cooperation.'" *Burns v. Vill. of Crestwood*, No. 12-CV-484, 2016 WL 946654, at *12 (N.D. Ill. Mar. 14, 2016) (*quoting Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) (*quoting Denton v. Allstate Ins. Co.*, 504 N.E.2d 756, 760 (1st Dist. 1987))). "In Illinois, criminal proceedings are commenced by the filing of a complaint, an indictment, or an information." *Id.* (*quoting Logan v*, 246 F.3d at 922 (*citing* 725 ILCS 5/111–1)). As neither Officer Ghiloni nor Det. Monaco filed the criminal complaint, Reyes' malicious prosecution claim fails.[3]

Regarding the probable cause element for a malicious prosecution action, it focuses on the moment the prosecution is initiated. *See Turner v. City of Chicago*, 91 Ill. App. 3d 931, 934–35, 415

---

[3] The disorderly conduct charge was stricken off with leave to reinstate on August 10, 2022. *See* SOF, ¶57. The State's Attorney's office had until January 17, 2023 to reinstate. *See* 725 ILCS 5/103-5(b). Filing this count prior to that date was premature, however at the time of this filing, the matter could be deemed terminated. *See Ferguson v. City of Chicago*, 213 Ill. 2d 94, 100–01, 820 N.E.2d 455, 459–60 (2004); Dkt. No. 1.

13

N.E.2d 481, 485 (1st Dist. 1980). "It is sufficient if there is probable cause, whether the accused is in fact guilty or not." *Id.* at 935, 485. "A mistake or error not amounting to gross negligence will not affect the question of probable cause in an action for malicious prosecution when there is the honest belie[f] by the complainant" at the time it is subscribed that the accused is probably guilty. *Id.* "A reasonable ground for belief of the guilt of an accused may be on information from other persons as well as on personal knowledge." *Id.*

Here, Siaba Green signed the criminal complaint, after being asked to do so by Sgt. Volanti. *See* SOF, ¶48-50. The basis for the disorderly conduct charge came from reasonably trustworthy information Sgt. Volanti obtained from City employees, including Siaba Green. *See* SOF, ¶22-25. Hence, as discussed above, there was probable cause for Siaba Green to sign the criminal complaint presented to her so the matter could proceed through the court system.

Additionally, there is zero evidence of malice by either Siaba Green or Sgt. Volanti to support this claim. "Malice is defined as the initiation of a prosecution for any reason other than to bring a party to justice." *Holt v. City of Chicago*, 2022 IL App (1st) 220400, ¶ 89, 214 N.E.3d 877, 906, (1st Dist. 2022). "Malice is proved by showing that the prosecution was started by improper motive." *Id.* "Malice may be inferred from want of probable cause when the circumstances are inconsistent with good faith by the prosecutor and where the want of probable cause has been clearly proved." *Turner v. City of Chicago*, 91 Ill. App. 3d 931, 937, 415 N.E.2d 481, 487 (1st Dist. 1980). "However, malice may not be inferred where probable cause exists." *Id.* So, if the Court concludes that there was probable cause, summary judgment should be granted for the Individual Defendants. Additionally, none of the Individual Defendants were familiar with Reyes prior to November 8, 2021, so there is no basis to conclude that any of them, particularly Siaba Green and Sgt. Volanti, had any malice against Reyes. *See* SOF, ¶4; *Denton v. Allstate Insurance Co.*, 152 Ill. App. 3d 578, 587, 504 N.E.2d 756 (1st Dist. 1986) (holding no malice existed where there was no evidence of any prior relationship between the plaintiff

14

and the defendant that might provide a basis for finding malice). There is no reason for this Court to conclude, for example, that the Individual Defendants' observations of Reyes were false or that the City employees intentionally lied about how being filmed impacted them. Any such allegations would be purely speculative and are insufficient to prevent summary judgment. Furthermore, the fact that Sgt. Volanti reached out to other officers for assistance prior to handcuffing Reyes, and deciding to read the statute cited on the City's signs to confirm whether or not the cited statute was applicable to the facts as he understood at the time, shows that Sgt. Volanti had no malice towards Reyes. *See* SOF, ¶37; 45. And if he did not have any malice towards Reyes, there should similarly be a finding of no malice regarding any of Siaba Green's conduct, particularly as she went about her business after Det. Monaco and Reyes left her office. *See* SOF, ¶19. For all these reasons, summary judgment on Count III should be granted in favor of the Individual Defendants.

F. *A Claim for indemnification is Not a Standalone Claim and Should be Dismissed if there are No Underlying Claims (Count IV).*

Pursuant to 745 ILCS 10/9–102, a local public entity may be required to indemnify a law enforcement officer. *Id.* However, an indemnification claim must be premised upon an underlying claim brought against the public employee, and the indemnification is only applicable if the plaintiff succeeds in his claim against the public employee. *See, e.g., Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 636–37 (7th Cir. 2019). Thus, if the Court grants summary judgment based on the reasons discussed in this brief, there should also be summary judgment on Count IV.

WHEREFORE, Defendants respectfully request that summary judgment be granted on all counts, and any other relief deemed equitable and just.

Respectfully submitted,
Defendants
By: */s/ Cynthia S. Grandfield*

Cynthia S. Grandfield (grandfield@dlglawgroup.com) (ARDC No. 6277559)
DEL GALDO LAW GROUP, LLC (1441 S. Harlem Ave., Berwyn, Illinois 60402/312-222-7000)