## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **SEAN PAUL REYES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 22 CV 7339** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **RICHARD VOLANTI,** | ) | **Maria Valdez** |
| **DETECTIVE MONACO, OFFICER** | ) | |
| **GHILONI, RUTH SIABA,** | ) | |
| **Individually, and the CITY OR** | ) | |
| **BERWYN, a Municipal** | ) | |
| **Corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sean Paul Reyes brought suit against Defendants Volanti, Monaco, Ghiloni, and Siaba Green[1] under 42 U.S.C. §§ 1983 and 1988 for unlawful arrest, civil conspiracy, malicious prosecution, and against the City of Berwyn for indemnification. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Before the Court is Defendants' Motion for Summary Judgment. [Doc. No. 81.] For the reasons set forth below, Defendants' motion for summary judgment is granted.

---

[1] In his complaint, Plaintiff interchanges "Ruth Siaba" with "Ruth Siaba Green." Defendant's last name is in fact "Siaba Green." Therefore, the Court will identify her a "Siaba Green" throughout this opinion.

## FACTS[2]

On November 8, 2021, Plaintiff went to Berwyn City Hall with a GoPro camera strapped to his person while also video recording with a cell phone. Before entering, he first recorded a sign on the door that read "No cameras or recording devices without prior approval per 720 ILCS /art. 14." He then entered the building. On the first floor, Plaintiff filmed additional signs posted referencing the statute that purportedly prohibited video recording (the "Eavesdropping Statute"). He also filmed several people, including City employees. One City employee told Plaintiff that video recording was prohibited. A number of City employees called Defendant Siaba Green, the City Administrator, for assistance. One City employee, Shannon Reberski, told Siaba Green that Plaintiff's conduct made Reberski feel uncomfortable.

Plaintiff proceeded to the second floor, which houses several offices including Siaba Green's. Defendant Detective Monaco was in Siaba Green's office when Plaintiff arrived. Siaba Green asked Plaintiff to stop recoding her and told him that it was prohibited without her permission pursuant to a state law. At some point, Siaba Green asked Monaco to call the police station and request a supervisor. Dispatch called Defendant Sergeant Volanti regarding Plaintiff's video recording in City Hall.

---

[2] Unless otherwise noted, the following material facts are undisputed or are deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces.

Monaco asked to talk to Plaintiff, and Plaintiff followed him. While they were speaking, Plaintiff told Monaco that the signs and the statute were unconstitutional. He also characterized himself as an independent journalist and told Monaco that he has freedom of the press. He said that he had business to conduct in City Hall and that he was working on a story about transparency and accountability.

Plaintiff followed Monaco down the stairs, and they continued to discuss the sign. Defendant Officer Ghiloni appeared on the stairwell and observed Plaintiff's and Monaco's interaction. Plaintiff continued to discuss the constitutionality of the sign and also stated that he was there to submit a Freedom of Information Act ("FOIA") request.

When Volanti arrived, Plaintiff was speaking with Ghiloni and Monaco. When Volanti asked Plaintiff about his purpose in City Hall, Plaintiff reiterated the same reasons he had given Monaco. Volanti then showed Plaintiff where he could submit a FOIA request. Plaintiff then proceeded to submit his FOIA request without incident, continuing to film while doing so.

Monaco told Volanti about Plaintiff's video recording and their requests that he cease. Volanti went to Siaba Green's office and spoke with her about the situation. He also spoke with Reberski, who told him that she was uncomfortable. Another City employee, Tricia Powers, told Volanti that she was frightened, alarmed, and disturbed. After Plaintiff completed his FOIA request, Volanti led Plaintiff outside and showed him the sign on the window that stated that it was

3

illegal to record in City Hall, citing the Eavesdropping Statute. Volanti used his phone to look up the Eavesdropping Statute. Volanti did not immediately arrest Plaintiff after looking up the Eavesdropping Statute and instead walked away to speak with Monaco.

Volanti, who had just been promoted to Sergeant days earlier, eventually decided to arrest Plaintiff. Plaintiff was placed in Ghiloni's vehicle, and Ghiloni transported Plaintiff to the Berwyn Police Station.

At the time of the events leading up to Plaintiff's arrest, Siaba Green believed that the signs permitted her to refuse to allow Plaintiff to record her while she was working in her office in City Hall. Once at the police station, Volanti determined that the Eavesdropping Statute did not apply to the circumstances of Plaintiff's video recording. Siaba Green also eventually came to learn that the Eavesdropping Statute was not applicable.

Volanti asked Siaba Green to sign a criminal complaint against Plaintiff for his conduct at City Hall. Siaba Green signed the complaint. She believed that Reyes was not at City Hall to seek any City services but instead to interrupt daily business by filming in City Hall. She believed that City Hall employees felt threatened, uncomfortable, and disturbed by Plaintiff's conduct. Plaintiff was charged with disorderly conduct. On August 10, 2022, the disorderly conduct charge against Plaintiff was stricken off with leave to reinstate.

## PROCEDURAL HISTORY

Plaintiff sued Defendants under 42 U.S.C. §§ 1983 and 1988, alleging in Count I that the Individual Defendants unlawfully arrested Plaintiff. In Count II, Plaintiff alleges that the Individual Defendants conspired to deprive Plaintiff of his constitutional rights. In Count III, Plaintiff alleges that the Individual Defendants maliciously prosecuted Plaintiff despite knowing that the charges were false. Count IV is a claim against the City for indemnification based on the Individual Defendants' employment with the City. After the completion of discovery, Defendants filed the instant motion for summary judgment on the basis that, *inter alia*, the Individual Defendants had probable cause to arrest Plaintiff.

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all reasonable inferences in favor of the nonmovant. *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 805 (7th Cir. 2014) (citation omitted).

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a

genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 484 (7th Cir. 1996); *see Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) ("'If the non-moving party bears the burden of proof on an issue, . . . that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact.'") (citation omitted). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted). Furthermore, courts are "'not required to draw every conceivable inference from the record,'" *United States v. Luce*, 873 F.3d 999, 1005 (7th Cir. 2017) (citation omitted), nor do they "have to scour the record or make a party's argument for it," *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 460 (7th Cir. 2019).

<u>**ANALYSIS**</u>

## I.   **Plaintiff's Video Evidence**

Before discussing Plaintiff's claims themselves, there Court must address the admissibility of one of the primary evidentiary bases for much of Plaintiff's Response to Defendants' Joint Statements of Undisputed Material Facts in Support of Their Motions for Summary Judgement and Plaintiff's Statement of Undisputed Additional Facts—the video Plaintiff took in Berwyn City Hall that underlies this entire dispute. After taking the video footage on the date in question, Plaintiff then edited the footage and uploaded it to YouTube. Plaintiff later lost the original

6

footage, sold the devices used to record the footage, and in response to Defendants'
discovery requests, provided only a link to the edited YouTube version of the video
and did not inform Defendants that the original had been lost. Plaintiff cites the
video in support of most of his responses to Defendants' statements of facts and in
support of most of his statements of additional facts.

Defendants contend that the video is inadmissible because there is no way to
know whether and to what extent it has been altered, and thus, the vast majority of
Plaintiff's responses to Defendants' statements of facts and Plaintiff's statements of
additional facts should be disregarded. Plaintiff responds that the video is so
definitive that there can be no doubt about what it shows. But the problem with the
video is what it does not show.

The video has two primary deficiencies. First, it has been altered. Upon
reviewing the video, the Court detected three cuts where footage is omitted, two of
which are while Plaintiff was inside Berwyn City Hall, and the other of which is
after he was led outside. There may be additional cuts that the Court did not detect.

Second, and more significantly, the video only shows events that took place in
Plaintiff's presence. For example, the video does not show the conversations Volanti
had with Reberski or Powers when they told Volanti that Plaintiff's conduct caused
them to feel causing them to feel uncomfortable, frightened, alarmed, and
disturbed. The Court will consider the video and those of Plaintiff's responses to
Defendants' statements of facts and Plaintiff's statements of additional facts that
rely upon it, but the Court will only afford the video the evidentiary weight to which

it is entitled with respect to each response or statement that relies upon it. In other words, if a response or statement relies upon the video as evidence of something the video does not show, it cannot constitute "admissible evidence in support of [Plaintiff's] version of events." *McKenzie*, 92 F.3d at 484.

## II.  Probable Cause

### A.  Plaintiff's Constitutional Claims

Plaintiff's constitutional claims consist of a claim for violation of his Fourth Amendment rights in the form of unlawful seizure (Count I) and conspiracy to do the same (Count II).

The Fourth Amendment protects against unreasonable seizures, and the "general rule [is] that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime." *Moorer v. City of Chicago*, 92 F.4th 715, 720 (7th Cir. 2024) (quoting *Bailey v. United States*, 568 U.S. 186, 192 (2013)). "Probable cause is a fluid concept that is based on the totality of the circumstances." *Id.* (citations omitted). "It is established where a probability or a substantial chance of criminal activity exists and does not require a certainty that a crime was committed." *Id.* (citations omitted). "As the [Supreme] Court has repeatedly noted, probable cause 'is not a high bar.'" *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). "It is assessed objectively, based upon conclusions that an arresting officer reasonably could draw from the information known." *Id.* (citations omitted). "At the time of the arrest police officers need probable cause that *a* crime has been committed, not that the criminal defendant

committed all of the crimes for which he or she is later charged." *Calusinski v. Kruger*, 24 F.3d 931, 935 (7th Cir. 1994) (emphasis added). "An arrest may be supported by probable cause that the arrestee committed *any* offense, regardless of the crime charged or the crime the officer thought had been committed." *United States v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015) (emphasis added).

"When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible." *Pasiewicz v. Lake Cnty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001); *see also Woods v. City of Chicago*, 234 F.3d 979, 997 (7th Cir. 2000) ("[P]olice officers have no constitutional obligation to conduct any further investigation before making an arrest if they have received information from a reasonably credible victim or eyewitness sufficient to supply probable cause.").

### 1.   Siaba Green

As an initial matter, contrary to Plaintiff's allegations in Count I, Siaba Green was not a police officer at the time of Plaintiff's arrest and did not arrest Plaintiff. Indeed, the parties do not dispute that she was not a police officer, but was rather the City Administrator, and Plaintiff acknowledges as much in his briefs. Thus, Plaintiff's unlawful seizure claim against Siaba Green fails as a matter of law.

## 2.    Defendant Police Officers

Volanti arrested Plaintiff; Monaco and Ghiloni merely assisted him. Thus, the relevant inquiry is only what Volanti knew when he arrested Plaintiff. Under these facts, Monaco and Ghiloni are not legally obligated to articulate any independent probable cause. *See, e.g.*, *Adeszko v. Degnan*, 2006 U.S. Dist. LEXIS 87026, *14 (N.D. Ill. Nov. 29, 2006 ("[M]erely assisting another officer in effectuating an arrest in progress does not require that the assisting officer acquire probable cause independent of the initiating officer.")

Plaintiff argues that Volanti did not have probable cause to arrest him for either disorderly conduct or for violating the Eavesdropping Statute. Under Illinois law, one commits the crime of disorderly conduct when "a person . . . knowingly . . . [d]oes any act in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). Further, "videotaping other people, when accompanied by other suspicious circumstances, may constitute disorderly conduct." *Reher v. Vivo*, 656 F.3d 772, 776 (7th Cir. 2011).

As an initial matter, Plaintiff disagrees that Volanti arrested him for disorderly conduct and claims the arrest was only for violating the Eavesdropping Statute. But Volanti testified in his deposition that he arrested Plaintiff for disorderly conduct. Plaintiff offers no contrary evidence. In his responses to Defendants' Statement of Facts, Plaintiff denies that Volanti arrested him for disorderly conduct solely on the basis that his "conduct was reasonable," citing three time stamps from the video. Plaintiff's assertion that his "conduct was reasonable"

10

does not constitute "definite, competent evidence to rebut" Volanti's testimony or Defendants' motion for three primary reasons. *See Vukadinovich*, 278 F.3d at 699. First, this assertion is merely Plaintiff's opinion. Second the video has several cuts in it, which may have shown unreasonable conduct that was edited out by Plaintiff. Third, and most importantly, the standard is whether Volanti reasonably believed that Plaintiff was in violation of the disorderly conduct statute, not whether Plaintiff's conduct was in fact reasonable. *See Moorer*, 92 F.4th at 720. Thus, Defendants' statement that Volanti arrested Plaintiff for disorderly conduct is deemed admitted.

It is undisputed that at least two City employees, Reberski and Powers, told Volanti that Plaintiff's conduct was causing them to feel uncomfortable, frightened, alarmed, and disturbed. As noted above, "[w]hen police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible." *Pasiewicz*, 270 F.3d at 524. Here, there is no evidence that either Reberski or Powers was not credible when they told Volanti that Plaintiff made them feel uncomfortable, frightened, alarmed, and disturbed. Indeed, Plaintiff never makes this argument in any of his pleadings or briefs. Therefore, Volanti's reliance on Reberski's and Powers's statements was sufficient to provide him with probable cause to arrest Plaintiff for disorderly conduct.

Plaintiff claims that the video creates a question of material fact as to whether the City employees were in fact alarmed, disturbed, or frightened. The video is edited and does not show any event that occurred outside of Plaintiff's field of view, including Volanti's conversations with Reberski and Powers. Moreover, Plaintiff does not even deny that Reberski or Powers made these statements to Volanti. Citing the video, he denies that he targeted Reberski intentionally or that any City employee was highly upset or visibly shaking during conversations with him, and he asserts that he was acting reasonable under the circumstances, and that he walked away when Reberski did not answer him. Even if taken as true, none of these assertions controvert what these employees told Volanti prior to Plaintiff's arrest.

The undisputed evidence establishes that Volanti had probable cause to arrest Plaintiff for "knowingly . . . act[ing] in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). Because Volanti had probable cause to arrest Plaintiff for disorderly conduct, the Court need not reach the question of whether Volanti had probable cause to arrest Plaintiff for violating the Eavesdropping Statue. *See Shields*, 789 F.3d at 745 ("An arrest may be supported by probable cause that the arrestee committed *any* offense, regardless of the crime charged or the crime the officer thought had been committed.") (emphasis added). Because there was no underlying constitutional violation (Count I), Plaintiff's conspiracy claim (Count II) also must

be dismissed. *See, e.g.*, *Ewell v. Toney*, 853 F.3d 911, 918 ("[T]here must be an underlying constitutional injury or the conspiracy claim fails.").

## B.     Plaintiff's Remaining Claims

Plaintiff's remaining claims consist of a claim for malicious prosecution (Count III) and an indemnification claim against the City based on the Individual Defendants' employment with the City (Count IV). As a threshold matter, there is no constitutional claim for malicious prosecution. *See Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011) (holding that there is no federal malicious prosecution cause of action because Illinois law recognizes a tort claim for malicious prosecution). Even if the Court were to construe Plaintiff's malicious prosecution claim as an Illinois state law claim, it still fails.

"[M]alicious prosecution suits are disfavored by law because of the potential deterrent effect on the reporting of crime." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921 (7th Cir. 2001) (citing *Joiner v. Benton Cmty. Bank*, 82 Ill. 2d 40 (Ill. 1980)). Under Illinois law, "malicious prosecution requires a showing that: (1) the defendant commenced proceedings against the plaintiff maliciously and without probable cause; (2) the suit terminated in the plaintiffs favor; and (3) the plaintiff was injured beyond the cost and annoyance of defending the suit." *Penn v. Harris*, 296 F.3d 573, 576 (7th Cir. 2002). Malice is present when a prosecution is initiated for any reason other than to bring a party to justice. *Rodgers v. Peoples Gas Light & Coke Co.*, 315 Ill. App. 3d 340, 349 (Ill. App. Ct. 2000). However, "malice may not be inferred where probable cause exists." *Turner v. City of Chicago*, 91 Ill. App. 3d 931,

13

937 (Ill. App. Ct. 1980); *see also Washington v. City of Chicago*, 98 F.4th 860, 863 (7th Cir. 2024) ("The existence of probable cause is a defense to . . . malicious prosecution claims."). As discussed above, there was probable cause to arrest Plaintiff, so Plaintiff's malicious prosecution claim fails.

Because there are no remaining claims, Plaintiff's claim for indemnification (Count IV) against the City also must be dismissed. *See, e.g.*, *Bruno v. Wells-Armstrong*, 93 F.4th 1049, 1056 (7th Cir. 2024) ("[B]ecause the City need only indemnify its employees if those employees are found liable, the indemnification claim fails if the employees are not liable.").

## III. Qualified Immunity

Even if probable cause did not exist to arrest Plaintiff, the arresting officers would be entitled to qualified immunity. "Qualified immunity requires the court to determine: (1) whether the record evidences the violation of a federal statutory or constitutional right; and if so (2) whether the right violated was clearly established at the time the violation occurred. *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 655 (7th Cir. 2024). "'If either inquiry is answered in the negative,'" qualified immunity protects the defendant official. *Id.* (quoting *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014)). Qualified immunity provides "ample room for mistaken judgments" and protects all but the "plainly incompetent and those who knowingly violate the law." *Id.* (quoting *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)).

Assuming *arguendo* that probable cause did not exist to arrest Plaintiff, a person does have a constitutional right to be free from arrest without probable cause, and that right is clearly established. *See id.* (citing *Fleming v. Livingston Cnty*, 674 F.3d 874, 879 (7th Cir. 2012)). But an officer is still entitled to qualified immunity in a false arrest case when "a reasonable officer could have mistakenly believed that probable cause existed." *Fleming*, 674 F.3d at 880 (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). This inquiry is sometimes referred to as "arguable probable cause." *Id.* Arguable probable cause is established when "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Id.*

The undisputed facts show that Volanti had probable cause to arrest Plaintiff based on the statements of Reberski and Powers. Therefore, even if Volanti did not have probable cause to arrest Plaintiff for disorderly conduct, he at least reasonably believed Plaintiff's video recording constituted knowingly committing an act "in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1).

The other Defendant Police Officers also would be entitled to qualified immunity. When assisting officers observe another officer arresting someone, they are entitled to believe that the arresting officer has probable cause. *See, e.g.*, *Boyle v. Torres*, 756 F. Supp. 2d 983, 992 (N.D. Ill. 2010). Thus, Monaco and Ghiloni reasonably believed that Volanti had probable cause to arrest Plaintiff.

15

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 81] is granted.

**SO ORDERED.**                                          **ENTERED:**


**DATE:**  **January 13, 2025**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**

16